UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITIGROUP MORTGAGE LOAN TRUST
2007-ACM3, by U.S. BANK, NATIONAL
ASSOCIATION, solely in its capacity as
Trustee,

                              Plaintiff,

        -against-

CITIGROUP GLOBAL MARKETS REALTY
CORP.,

                              Defendant.

U.S. BANK, NATIONAL ASSOCIATION,
solely in its capacity as Trustee for
CITIGROUP MORTGAGE LOAN TRUST
2007-AR7,

                              Plaintiff,

        -against-

CITIGROUP GLOBAL MARKETS REALTY
CORP. and CITIMORTGAGE, INC.,

                              Defendants.

13cv2843 (GBD) (DF)

13cv6989 (GBD) (DF)

**ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

        Currently before this Court are three separate discovery disputes initiated by plaintiff

U.S. Bank, National Association ("Plaintiff")[1] against defendants Citigroup Global Markets

Realty Corp ("CGMRC") and CitiMortgage, Inc. ("CMI") (collectively "Defendants") and non-

party Fortace, LLC ("Fortace").  The first dispute, filed only in Case No. 13cv6989 (the "AR7

_____

        [1] As noted in the captions, Plaintiff is proceeding solely in its capacity as Trustee for
Citigroup Mortgage Loan Trust 2007-ACM3 ("ACM3 Trust") and Citigroup Mortgage Loan
Trust 2007-AR7 ("AR7 Trust") in the respective litigations.

Action"; docket entries abbreviated "AR7 Dkt."), concerns Defendants' purportedly improper

withholding of documents on the basis of the attorney-client privilege and/or work-product

immunity.  (Letter from Courtney B. Statfeld, Esq. ("Statfeld"), to the Court, dated July 12, 2016

("Pl. 7/12/16 Mot.") (AR7 Dkt. 134).)  The second dispute, filed in both the AR7 Action and

Case No. 13cv2843 (the "ACM3 Action"; docket entries abbreviated "ACM3 Dkt."), concerns

Fortace's purportedly improper withholding of documents on the basis of attorney-client

privilege.  (Letter from Statfeld to the Court, dated Sept. 16, 2016 ("Pl. Fortace Mot.") (AR7

Dkt. 152; ACM3 Dkt. 161 (identical).)  The third dispute, filed only in the AR7 Action, concerns

CMI's refusal to produce a Rule 30(b)(6) witness to testify regarding three deposition topics

noticed by Plaintiff.  (Letter from Statfeld to the Court, dated Sept. 16, 2016 ("Pl. 30(b)(6)

Mot.") (AR7 Dkt. 151).)  These three disputes are addressed in turn.

## BACKGROUND

The facts underlying the above-captioned actions are more fully set forth in opinions by

the Honorable George B. Daniels, U.S.D.J., addressing Defendants' prior motions to dismiss (*see*

AR7 Dkt. 58; ACM3 Dkt. 51), familiarity with which is assumed.  In summary, in both actions,

Plaintiff has alleged that Defendants breached contracts relating to securitized pools of thousands

of mortgage loans selected and sold by CGMRC, and held by trusts, for which Plaintiff serves as

Trustee.  (*See* AR7 Dkt. 99 (Third Amended Complaint, dated June 24, 2015 ("AR7 TAC")),

¶ 1; ACM3 Dkt. 82 (First Amended Complaint, dated Nov. 21, 2014 ("ACM3 FAC")), ¶ 1.)

Through the agreements at issue, each executed in 2007, CGMRC made a series of contractual

representations and warranties regarding the characteristics of the securitized mortgage loans,

and, in the event that any of those representations and warranties were breached, allegedly

promised to cure the breaches or repurchase the "defective" loans.  (*See* AR7 TAC ¶¶ 2-3;

ACM3 FAC ¶¶ 2-3.)  CMI, as "Master Servicer" of the AR7 Trust, was purportedly obligated by

2

contract to notify Plaintiff of any such breaches, and to enforce CGMRC's alleged obligations to cure or repurchase defective loans.  (*See* AR7 TAC ¶¶ 18, 88.)

According to the respective Complaints, forensic reviews of the loans in AR7 and ACM3 Trusts revealed that CGMRC had breached one or more of its representations and warranties in connection with a substantial number of the securitized loans.  (*Id.* ¶ 4; ACM3 FAC ¶ 3.)  In 2013, Plaintiff notified CGMRC of the breaches, and requested that CGMRC cure the breaches or repurchase the loans.  (AR7 TAC ¶ 5; ACM3 FAC ¶ 3.)  CGMRC apparently requested additional information, but failed to cure any breaches or repurchase any loans.  (AR7 TAC ¶ 5; ACM3 FAC ¶ 3.)  Plaintiff claims that, by failing to cure any breaches of representations and warranties and/or repurchase defective loans, CGMRC breached its contractual obligations.  (*See id.* ¶ 106; ACM3 FAC ¶ 69.)  Plaintiff also claims that, by failing to notify Plaintiff of CGMRC's breaches of representations and warranties in connection with the securitized loans, and by failing to enforce CGMRC's purported obligations to cure or repurchase, CMI also breached its contractual obligations.  (*See* AR7 TAC ¶ 127.)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Attorney-Client Privilege

In diversity cases such as this one, state law governs assertions of the attorney-client privilege.  *Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.*, No. 14cv1561 (PKC), 2016 WL 3542453, at *1 (S.D.N.Y. June 23, 2016) (citing Fed. R. Evid. 501).  Under New York law, "[t]he attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship."  *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 36 N.Y.S.3d 838, 842 (2016) (citing N.Y.C.P.L.R. § 4503(a)(1)).  "[L]egal

3

advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). "[A] lawyer's communication is not cloaked with privilege when the lawyer is hired for business or personal advice, or to do the work of a nonlawyer." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 575 N.Y.S.2d 809, 815 (1991); *see also Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 542 N.Y.S.2d 508, 510-11 (1989) (the privilege does not protect business advice communicated by an attorney to a client, but, "[s]o long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters"). The attorney-client privilege is "narrowly construed" as it "shields from disclosure pertinent information and therefore constitutes an obstacle to the truth-finding process." *Ambac*, 36 N.Y.S.3d at 842 (internal quotation marks and citations omitted). The party asserting the privilege bears the burden of establishing its essential elements. *Id.* at 842-43.

Generally, a party waives the attorney-client privilege as to an otherwise-privileged communication if that communication is shared with a third party. *See id.* at 843. In adopting the Second Circuit's ruling in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), however, the New York Court of Appeals has recognized that "communications made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication, generally will be privileged." *People v. Osorio*, 550 N.Y.S.2d 612, 615 (1989) (citing *Kovel*, 296 F.2d at 921-22). The court in *Kovel* held that communications between a client and an accountant were privileged, where the accountant was hired to assist the attorney in its representation of the client and served a function similar to that of a foreign language interpreter for the client's financial information. *See Kovel*, 296 F.2d at 922. The court emphasized, however, that "[w]hat is vital to the privilege is that the communication be made in

confidence for the purpose of obtaining legal advice from the lawyer." *Id.* The court further emphasized that, "If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Id.* (citations omitted); *see also Cytec Indus., Inc.*, 2016 WL 3542453, at *2 ("[T]he standard is not whether the third party's role 'proves important to the attorney's ability to represent the client,' but whether its purpose is to 'improve the comprehension of the communications between attorney and client.'" (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).

To maintain the attorney-client privilege under *Kovel*, a party must demonstrate "'a reasonable expectation of confidentiality under the circumstances'" and that "'disclosure to the third party was necessary for the client to obtain informed legal advice.'" *Cohen v. Cohen*, No. 09cv10230 (LAP), 2015 WL 745712, at *3 (S.D.N.Y. Jan. 30, 2015) (quoting *Don v. Singer*, 866 N.Y.S.2d 91, 2008 WL 2229743, at *5 (Sup. Ct. May 19, 2008)). The third party is "necessary" where it is "'indispensable or serve[s] some specialized purpose in facilitating the attorney client communications.'" *Id.* (quoting *Don*, 2008 WL 2229743, at *5); *see also Ackert*, 169 F.3d at 139-40 (rejecting application of the attorney-client privilege under *Kovel* as to communications between a client's attorney and an independent investment banker, where the banker did not act as a "translator or interpreter of client communications," but simply provided the attorney with information regarding a proposed transaction and its tax consequences); *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 592 (S.D.N.Y. 2015) (holding that communications between a client's attorney and a human resources consultant were not privileged under *Kovel* where the consultant only conducted "factual research . . . to assist Chipotle in making a business decision," but did not assist the attorney in communicating with Chipotle or rendering legal advice).

###### B.    <u>Work-Product Protection</u>

Federal law governs assertions of work-product immunity. *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007).  Under the work-product doctrine, a party may not obtain discovery of "documents and tangible things . . . prepared in anticipation of litigation or for trial," unless the party makes a showing of "substantial need" and an inability to obtain substantially equivalent materials "without undue hardship."  Fed. R. Civ. P. 26(b)(3).  A document is said to be prepared in anticipation of litigation if, "in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998) (emphasis in original) (citation and internal quotation marks omitted). Where documents have been prepared for both litigation and business purposes, the question of whether the documents are immune from discovery under the work-product doctrine turns on whether the material "would have been prepared irrespective of the expected litigation." *Id.* at 1204.  Even where "'there is little doubt under the evidence that a party had the prospect of litigation in mind when it directed the preparation of the document,' or that 'such documents might also help in preparation for litigation,' work product protection is not available for documents 'that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation.'" *Allied Irish Banks*, 240 F.R.D. at 106 (quoting *Adlman,* 124 F.3d at 1202-04).  The party asserting work-product protection bears the burden of establishing its essential elements. *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318 F.3d 379, 383-84 (2d Cir. 2003).

### C.    <u>Privilege Logs</u>

A party that withholds otherwise discoverable information on the ground of attorney-client privilege or work-product immunity must "expressly make the claim" of protection, "describe the nature of the documents, communications, or tangible things not produced or disclosed," and "do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  Local Civil Rule 26.2 imposes the particular requirements that the party withholding discoverable information identify:

> (i) the type of document . . . ; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

Local Civ. Rule 26.2(a)(2)(A).  In order to satisfy the requirements of Rule 26(b)(5) and Local Civil Rule 26.2, a party must provide its adversary with an index of documents, *i.e.*, a privilege log, that, "as to each document, . . . set[s] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."  *Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157 (S.D.N.Y. 2014) (internal quotation marks and citations omitted); *see also Chipotle Mexican Grill.*, 94 F. Supp. 3d at 600-01 (holding that privilege-log entries were compliant with the federal and local rules where they were "sufficiently detailed to give the plaintiffs adequate notice of the underlying claims of privilege because they identif[ied] that the documents [were] discussing legal advice on a particular topic" (citations omitted)).

### D.    <u>Rule 30(b)(6) Depositions</u>

Where a corporate deposition is noticed under Rule 30(b)(6) of the Federal Rules of Civil Procedure, the corporation must designate one or more persons to testify on its behalf regarding

"information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6); *see also Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999).  "While the Rule 30(b)(6) deponents need not have personal knowledge concerning the matters set out in the deposition notice[,] the corporation is obligated to prepare them so that they may give knowledgeable answers."  *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, No. 10cv1391 (LGS) (JCF), 2013 WL 1286078, at *2 (S.D.N.Y. Mar. 28, 2013) (internal quotation marks and citations omitted).  "The responding party must prepare the designee [or designees] to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* (internal quotation marks and citations omitted).

A Rule 30(b)(6) deposition notice is subject to the limitations on discovery set forth in Rule 26.  *Dealer Comput. Servs., Inc. v. Curry*, No.12cv3457 (JMF) (JLC), 2013 WL 499520, at *1-2 (S.D.N.Y. Feb. 7, 2013) (noting that Rule 30(b)(6) deposition topics must be relevant and may not be unduly burdensome or duplicative of other discovery (citations omitted)).  Under Rule 26, as amended in 2015,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  The party seeking discovery bears the burden of demonstrating relevance.  *See Walker v. H & M Henner & Mauritz, L.P.*, No. 16cv3818 (JLC), 2016 WL 4742334, at *2 (S.D.N.Y. Sept. 12, 2016).

Prior to 2000, discovery was authorized as to any matter relevant to the "subject matter" of the case.  *See RLS Assocs., LLC v. United Bank of Kuwait, PLC*, No. 01cv1290 (CSH) (DF),

8

2003 WL 1563330, at *7 (S.D.N.Y. Mar. 26, 2003).  The 2000 amendments to Rule 26 narrowed the scope of permissible discovery so that the focus would be on the parties' claims and defenses.  *Id.* (citing Fed. R. Civ. P. 26(b)(1) advisory committee's note).  The 2015 amendments, by adding the requirement that discovery be "proportional to the needs of the case,"[2] were "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information."  *Walker*, 2016 WL 4742334, at *2 (internal quotation marks and citation omitted).

## II.  PLAINTIFF'S JULY 12, 2016 MOTION CHALLENGING DEFENDANTS' WITHHOLDING OF DOCUMENTS AS PRIVILEGED AND/OR WORK PRODUCT

In its July 12, 2016 motion, Plaintiff contends that Defendants have improperly withheld approximately 1,903 documents on the basis of the attorney-client privilege and/or work-product immunity, and have done so through deficient privilege and redaction logs.  (Pl. 7/12/16 Mot., at 2.)  This Court initially addressed this motion in an Order, dated August 26, 2014, in which it deferred ruling on the issues raised in the motion until Defendants submitted a sample of withheld documents, selected by Plaintiff from Defendants' privilege logs.  (*See* AR7 Dkt. 144 ("8/24/16 Order").)  The 8/24/16 Order also permitted Defendants to file explanatory affidavits or declarations for the purpose of providing the Court with the context necessary to aid it in understanding the purportedly privileged or work-product nature of the documents subject to *in camera* review.  (*See id.*)  Defendants submitted a set of 28 documents and their attachments to

---

[2] Although the term "proportional" did not appear in Rule 26(b) until the 2015 amendments, the concept of proportionality as a limit on discovery was applied by courts in this Circuit prior to the amendments.  *See Robertson v. People Magazine*, No. 14cv6759, 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015).

the Court for its *in camera* review on September 23, 2016.  Defendants also filed an explanatory

declaration from Citigroup Senior Vice President and Assistant General Counsel, Charlene

Jones, dated September 23, 2016.  (*See* AR7 Dkt. 154 ("Jones Decl.")).  Having reviewed

Defendants' submissions, this Court grants Plaintiff's motion in part and denies it in part.

### A.      Documents Subject to this Court's *In Camera* Review

As Plaintiff's have framed their July 12, 2016 motion in terms of separate, enumerated

document categories withheld by Defendants, and, as Defendants have submitted documents for

*in camera* review that generally fall under more than one of those categories, the discussion

below proceeds by first addressing Plaintiff's document categories in general, and then by

addressing each of the documents subject to *in camera* review in particular.

### 1.      Document Categories 1A-1F:  Documents Purportedly Created in the Ordinary Course of Business

Based on its reading of Defendants' privilege-log entries, Plaintiff contends that

Defendants have withheld a wide range of documents created in the ordinary course of business.

(Pl. 7/12/16 Mot., at 2-6.)  It describes those documents as relating to the following categories:

Category 1A:     Analyses and communications regarding the
                 repurchase of mortgages pursuant to a
                 contractual obligation to identify and buy
                 back breaching mortgage loans;

Category 1B:     Due diligence and post-closing loan
                 surveillance on loans securitized by
                 CGMRC and serviced by CitiMortgage;

Category 1C:     Representations and warranties, presumably
                 in mortgage loan purchase agreements;

Category 1D:     Servicing of loans;

Category 1E:     Borrower fraud claims;

> Category 1F:     Other regular business functions relating to
> fundamental aspects of Defendants'
> securitization business practices.

(*Id.*; *see also id.*, Exs. 18-19 (annotated privilege and redaction logs).)  With its motion, Plaintiff

has submitted to the Court unrebutted deposition testimony and documents produced in

discovery, indicating that each of these categories relates to tasks that Defendants performed in

the ordinary course of business, during the relevant time period – generally without the

involvement of attorneys.  (*See id.*, at 4-7, nn. 7-18 (citing and quoting from Exs. 5-17).)

Moreover, as to Category 1A, Plaintiff has asserted, without opposition, that CGMRC was

contractually obligated to conduct loan repurchase reviews after receiving repurchase requests.

(*Id.*, at 4.)[3]

In arguing that Category 1A-1F documents are not subject to the attorney-client privilege

or work-product immunity, Plaintiff relies upon a series of cases with facts similar to this case,

beginning with *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 941 N.Y.S.2d 56 (1st Dep't

2012).  In *MBIA*, recently reaffirmed by the First Department in *Bank of New York Mellon v.

WMC Mortg., LLC*, 35 N.Y.S.3d 26, 27 (1st Dep't 2016), the court held that "documents and

information concerning defendants' repurchase review, generated in response to plaintiff's

repurchase requests, [were] discoverable," where the record demonstrated that "processing

repurchase requests was an inherent and longstanding part of defendants' business."  *MBIA*,

941 N.Y.S.2d at 58.  The court further noted:

---

[3] Plaintiff's position regarding Defendants' contractual obligation to conduct loan
repurchase analyses is supported by relevant case law.  *See Assured Guar. Mun. Corp. v. UBS
Real Estate Sec. Inc.*, Nos. 12cv1579, 12cv7322 (HB) (JCF), 2013 WL 1195545, at *7 (S.D.N.Y.
Mar. 25, 2013) (finding that a party was "contractually obligated to conduct repurchase reviews,"
and "would have performed the repurchase analyses even had there been no threat of litigation,"
where, as here, the party was contractually bound by certain "cure or repurchase obligations" in
the event that mortgage loan representations and warranties were breached).

11

> That a new division was created to respond to plaintiff's repurchase requests, or that litigation appeared imminent, is of no moment; defendants were, and always had been, contractually obligated to conduct repurchase reviews and such reviews were, and always had been, conducted by defendants' own staff of underwriters and auditors.

*Id.*

In response, Defendants, through counsel, contend that "it was in no way an 'inherent and long-standing part' of Citigroup's business to review *bulk* loan repurchase notices.  Rather, receiving and analyzing these bulk requests marked a shift from ordinary business analysis into litigation preparation."  (Letter from Susanna Buergel, Esq. ("Buergel"), to the Court, dated July 25, 2016 ("Def. Opp. to 7/12/16 Mot.") (AR7 Dkt. 138), at 4 (emphasis added).) Additionally, Defendants argue that Plaintiff "paints with too broad a brush," in that, while many of the documents that Defendants have withheld may concern matters relating to their ordinary course of business, the particular documents nonetheless satisfy the requirements of the attorney-client privilege and/or work-product immunity.  (*See id.*, at 3-8.)

Courts have rejected the argument that the involvement of counsel in conducting repurchase reviews categorically shields such reviews and related documents and communications from discovery.  In *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc.*, No. 11cv6189 (DLC), 2014 WL 1327952 (S.D.N.Y. Apr. 3, 2014), for example, the court held:

> To the extent that the Nomura documents are the kinds of documents that were routinely prepared before April 2011 by business personnel for use by business personnel in connection with decisions about the repurchase of loans and to negotiate repurchase requests with business partners, then they would not be protected by the work-product privilege simply because that task was transferred to personnel within the legal department. Similarly, to the extent an attorney is making a judgment about the probability of a loan requiring repurchase, it is not clear from the submissions why the exercise of that judgment constitutes legal advice.

*Id.* at *2; *see also ACE Sec. Corp. v. DB Structured Prods., Inc.*, 2016 N.Y. Slip Op. 26337, 2016 WL 6079170, at *2, 6-7 (Sup. Ct., N.Y. Cnty., Oct. 12, 2016) (similar); *Home Equity Mortg. Trust Series 2006-1 v. DLJ Mortgage Capital, Inc.*, 2014 N.Y. Slip Op. 31923(U), 2014 N.Y. Misc. LEXIS 3282 (Sup. Ct., N.Y. Cnty., July 16, 2014) (similar). Courts have similarly rejected such a view in the context of substantial – or as Defendants characterize them, "bulk" – repurchase requests. *See, e.g.*, *Assured*, 2013 WL 1195545, at *8-9 ("The mere fact that outside counsel and consultants were retained to assist the repurchase review is insufficient to shield all of the repurchase documents from discovery. . . . The fact that these repurchase demands were 'unprecedented' in size and scope does not place these materials outside the ordinary course of business for the purposes of work product protection.").

On the other hand, courts have also rejected the categorical view, adopted by Plaintiff, that documents and communications regarding repurchase reviews, conducted pursuant to a contractual obligation, can never be subject to the attorney-client privilege or work-product immunity. In *MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12cv7322 (HB) (JCF), 2013 WL 5437354 (S.D.N.Y. Sept. 27, 2013), the court characterized such a view as "an oversimplification," explaining that "it is perfectly plausible that additional analyses of repurchase demands would not have been done in the normal course, but only because of the threat of litigation, which is what [the defendant] asserts here." *Id.* at *1; *see also Deutsche Bank Nat'l Trust Co v. WMC Mortg., LLC*, No. 3:12cv933 (CSH), 2015 WL 1650835, at *21 (D. Conn. Apr. 14, 2015) (rejecting "the extreme positions taken by both parties" that repurchase documents are either always or never discoverable where attorneys are involved). Indeed, in a subsequent decision in the *MASTR* litigation, the court held:

> Because they were created in accordance with a contractual obligation, [UBS' repurchase] analyses are not protected by the

> work product doctrine *unless UBS can show that they were*
> *specifically directed to litigation strategy or defenses and were*
> *therefore created in a form significantly different than they*
> *otherwise would have been.*

*MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12cv7322

(HB) (JCF), 2013 WL 6405047, at *1 (S.D.N.Y. Dec. 6, 2013) (emphasis added); *see also ACE*

*Sec. Corp.*, 2016 WL 6079170, at *6-7 (rejecting categorical assertions of work-product

immunity and attorney-client privilege over repurchase analyses and related documents where

the record indicated that the involvement of counsel and outside consultants did not

"significantly change[ ]" the format and nature of the analyses).

Having conducted an *in camera* review of a number of Defendants' withheld

documents – which this Court discusses on a document-by-document basis, *infra* – this Court

finds that in some, but not all cases, Defendants have improperly withheld documents created in

the ordinary course of business, apparently on the sole theory that their receipt of "bulk"

repurchase demands from Plaintiff, and the involvement of counsel, categorically shields such

documents from discovery.  (*See infra*, Discussion, at Section II(B).)  As illustrated by the

authority above, this is improper.  Defendants may not categorically assert privilege or work-

product immunity over documents pertaining to ordinary business functions – such as

determining whether to repurchase loans consistent with a contractual obligation – by

outsourcing those business functions to counsel, or to third-parties, with counsel serving as an

intermediary.

For these reasons, in addition to producing the specific documents discussed below, this

Court directs Defendants to conduct an additional review of the documents that Plaintiff has

annotated as falling under Categories 1A-1F, and revisit its production decisions consistent with

the guidance in this Order.  *See, e.g.*, *MASTR Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS*

14

*Real Estate Sec. Inc.*, No. 12cv7322 (HB) (JCF), 2014 WL 25709, at *3 (S.D.N.Y. Jan. 2, 2014) (ordering the "re review" of certain withheld documents and production of others, where the court's *in camera* review revealed that the defendant and a third-party vendor hired by its counsel had withheld documents created in the ordinary course of business in response to repurchase demands).  Defendants are directed to complete this review and any supplemental document production no later than February 3, 2017.

### 2.    Document Category 3:<br>Pre-Existing Documents Forwarded to Counsel

Plaintiff also contends that Defendants have improperly withheld under the attorney-client privilege documents falling under a so-called "Category 3," encompassing pre-existing documents merely forwarded to counsel.  (Pl. 7/12/16 Mot., at 8.)  Defendants justify their assertions of privilege on the ground that the pre-existing documents "are part and parcel of confidential communications between Citigroup and its in-house and outside counsel made for the purpose of obtaining legal advice."  (Def. Opp. to 7/12/16 Mot., at 10.)

Plaintiff's position is consistent with established law.  Under New York law, "[t]he mere circumstance that . . . documents were revealed in confidence to a lawyer does not of itself transform the papers into privileged communications."  *Matter of Berkins Record Storage Co.*, 476 N.Y.S.2d 806, 807 (1984); *see also GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, No. 11cv1299 (HB) (FM), 2011 WL 5439046, at *13 (S.D.N.Y. Nov. 10, 2011) (applying New York law and holding that "factual information and computations" were not privileged "simply because they were conveyed to counsel" (collecting cases)); *see generally Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962) ("pre-existing documents and financial records not prepared by [the client] for the purpose of communicating with [its] lawyers in confidence . . . have acquired no special protection from the simple fact of being turned over to an attorney");

*Fed. Hous. Fin. Agency*, 2014 WL 1327952, at *3 (records created in the ordinary course of business "do not become privileged because copies are also sent to counsel in connection with a request for advice," but "altered business records" are privileged if they have been "altered to assist counsel in providing advice"); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 643 (S.D.N.Y. 1991) ("[A] document does not come within the attorney-client privilege merely by being forwarded to or routed through the counsel's office."). Indeed, it is well-established that the attorney-client privilege is "limited to communications – not underlying facts." *Spectrum*, 575 N.Y.S.2d at 814 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.")).[4]

For these reasons, in addition to producing the specific documents discussed below, Defendants are directed to conduct an additional review of documents annotated by Plaintiff as Category 3 documents. Defendants should produce those documents, unless Defendants find that Plaintiff was mistaken in assuming that the documents were pre-existing, non-privileged documents that were not altered for the purpose of seeking legal advice. Defendants are directed to complete this review and any supplemental document production no later than February 3, 2017.

---

[4] Defendants' apparent reliance upon *United States v. Cunningham*, 672 F.2d 1064 (2d Cir. 1982) to argue against this authority is misplaced. In *Cunningham*, the court noted that the attorney-client privilege "attaches *not* to the information [underlying a communication] but to the communication of the information" between attorney and client. *Id.* at 1073 n.8 (emphasis added). *Cunningham* is therefore consistent with the authority above, in that it permitted discovery into underlying facts. *Id.* ("[The client] may be examined as to any fact but may not, absent a waiver, be compelled to say whether or not he communicated that fact to his counsel.").

### 3. Document Category 5: <u>Work Product Documents Not Related to Litigation</u>

Plaintiff also asserts that Defendants have improperly withheld "Category 5" documents, encompassing documents relating to "general subjects that are not litigation-related," but over which Defendants have asserted work-product immunity.  (Pl. 7/12/16 Mot., at 9.)  Plaintiff argues that Defendants have waived work-product immunity for these documents because the privilege-log entries corresponding to these documents fail to identify the specific litigation at issue or state that the document was created in anticipation of litigation.  (*Id.*; *see also* Letter from Statfeld to the Court, dated Aug. 5, 2016 ("Pl. Reply in Support of 7/12/16 Mot.") (AR7 Dkt. 139), at 11.)  Neither detail, however, must be stated explicitly in a privilege-log entry.  Work-product immunity attaches to documents "prepared or obtained because of the prospect of litigation," *Adlman*, 134 F.3d at 1202; actual, pending litigation is not required, *see, e.g.*, *Garrett v. Metro. Life Ins. Co.*, No. 95cv2406 (PKL) (LAB), 1996 WL 325725, at *3 (S.D.N.Y. June 12, 1996), *report and recommendation adopted*, 1996 WL 563342 (Oct. 3, 1996) ("Regulatory investigations by outside agencies present more than a mere possibility of future litigation, and provide reasonable grounds for anticipating litigation." (citations omitted)).  Moreover, when a party asserts work-product immunity over a document, it necessarily asserts, by implication, that the document was prepared "in anticipation of litigation," given that those words appear in the definition of work-product immunity itself.  *See* Fed. R. Civ. P. 26(b)(3).  Accordingly, this Court finds that Defendants have not waived work-product protection for Category 5 documents by virtue of the content of their privilege-log entries.

Plaintiff also argues, however, that Category 5 documents are not shielded from discovery for the same reasons Category 1A-1F documents are not, *i.e.*, because they concern matters related to Defendants' ordinary course of business.  (Pl. 7/12/16 Mot., at 9.)  This Court

therefore directs Defendants to conduct an additional review of Category 5 documents consistent with its instructions as to Category 1A-1F documents and this Court's findings as to Defendants' *in camera* review submissions discussed below.  Defendants are directed to complete this review and any supplemental document production no later than February 3, 2017.

> ### B.   This Court's *In Camera* Review

As an initial matter, this Court notes that it requested up to five documents for each of Categories 1A-1F, 3, and 5, totaling up to 40 documents (*see* 8/24/16 Order), but received 28 documents in total.[5]  Practically all of the 28 documents, however, fall under more than one of Plaintiff's document categories.  The discussion below should therefore allow Defendants to extrapolate from this Order and re-evaluate its document production.

> #### 1.   Defendants Have Withdrawn Their Assertion of Privilege And/Or Work-Product Protection as to Multiple Documents.

Of the 28 documents falling under Plaintiff's Categories 1A-1F, 3, and 5 that Defendants have submitted for *in camera* review, Defendants have withdrawn their assertions of privilege and work-product immunity as to 10 documents and their attachments.  Defendants have also stated their willingness to produce another two of the 28 *in camera* review documents in redacted form.  Additionally, Defendants have asserted that they will now conduct a further review of all other documents that they have withheld in this action in order to identify and

---

[5] Although this Court received a package of 40 documents from Defendants, 12 of those documents related to the Fortace document dispute, discussed *infra*.  This Court presumes that the parties agreed upon this division.

produce, in full or redacted form, documents similar to these 12 documents and their attachments.[6]

This Court has reviewed these 12 documents and their attachments, and finds that, without additional context, Defendants' prior assertions of privilege and work-product immunity appear to have been unfounded. For example, "Sample 20" (*i.e.*, the document Bates-stamped as AR7InCameraSample20) is an email chain with the word "privileged" in the subject line, and in which Defendants' inside counsel is copied. The document bears no indication, however, that any of the individuals involved in the discussion were communicating with counsel, explicitly or implicitly, "for the purpose of obtaining or facilitating legal advice." *See Ambac*, 36 N.Y.S.3d at 842. Similarly, Samples 17, 28, and 33 appear to constitute correspondence involving inside counsel that merely discuss and transmit factual data about Defendants' business operations. Full production of these and similar documents is required. *See, e.g.*, *Upjohn Co.*, 449 U.S. at 395 ("a party cannot conceal a fact merely by revealing it to his lawyer").

Defendants' decision to produce CITI-2007-AR7 00208468 and Samples 9, 17, 18, 20, 26, 28, 33, 34, and 35 in full appears to reflect a proper application of the attorney-client privilege and work-product immunity, as do Defendants' proposed redactions of Samples 13 and 29, which this Court hereby approves. It is unclear whether Defendants intend to produce Sample 29's attachment based on their submissions, but, given that the attachment apparently summarizes factual information about Defendants' business, and nothing more, it should be

---

[6] Defendants made each these representations in a letter to the Court dated September 23, 2016 and signed by Andrew J. Markquart, Esq. The letter, which was submitted as a cover letter to Defendants' and Fortace's binder of documents for *in camera* review, was not publicly filed. As it does not appear that this letter itself contains any privileged or confidential information, Defendants are directed to file it on the Dockets of both the AR7 and ACM3 Actions.

produced.  If they have not already done so, Defendants are directed to produce each of these documents no later than December 16, 2016.

2.    <u>**Sample Documents Improperly Withheld**</u>

Despite being given the opportunity to submit explanatory affidavits or declarations to support their assertions of privilege or work-product immunity (*see* 8/24/16 Order), Defendants have only submitted the Jones Declaration, which addresses three of the withheld documents. (*See* Jones Decl. ¶¶ 8-9 (discussing Samples 11, 12, and 22).)  As to documents not addressed by Jones, this Court analyzes privilege and work-product immunity by "reviewing the face of the withheld documents in light of the general context in which they were prepared and the information disclosed on the privilege [ ] logs."  *See AIU Ins. Co. v. TIG Ins. Co.*, No. 07cv7052 (SHS) (HBP), 2008 WL 4067437, at *10 (S.D.N.Y. Aug. 28, 2008), *modified on reconsideration*, 2009 WL 1953039 (July 8, 2009).  It is Defendants' burden to establish the applicability of the attorney-client privilege and work-product immunity with competent evidence, rather than conclusory statements of counsel.  *See In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013).  Accordingly, to the extent there is any ambiguity as to a document's privileged or work-product nature, and Defendants have failed to provide this Court with factual context for that document, as invited, this Court resolves such ambiguity in favor of Plaintiff.

For the reasons below, Defendants have failed to meet their burden in establishing that Samples 10, 14, 16, 19, 27, 30, 31, and 32 are shielded from discovery, and are therefore directed to produce each document and its attachments in full, no later than December 16, 2016. Defendants have also failed to meet their burden in establishing that Samples 21, 23, and 24

should be withheld in their entirety, and are therefore directed to produce parts of those documents, as explained below, no later than December 16, 2016.

### a.  Documents That Should Be Produced In Full

Samples 10, 14, and 16[7] appear to be nothing more than emails from Citigroup "business people"[8] transmitting factual data regarding Defendants' business to other Citigroup business people, inside counsel, and/or outside counsel.  Nothing on the face of the emails or their attachments suggests that the information was being provided to counsel in order to facilitate the rendering of legal advice, as opposed to business advice.  Moreover, although Defendants' privilege log states that Sample 14's attachment was "generated in anticipation of litigation," nothing in the transmittal email or the attachment itself, a spreadsheet, supports that claim. Defendants are directed to produce each of these documents and their attachments.  *See, e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79-80 (S.D.N.Y. 2010) (holding that transmittal emails that did not reflect the provision of, or request for, legal advice, attorney mental impressions, or facts prepared in anticipation of litigation were not protected by the attorney-client privilege or work-product doctrine).

Sample 19 is a November 2012 email chain initiated by Defendants' in-house counsel, through which he solicits factual information from Citigroup business people in order to gauge

---

[7] Plaintiff contends that Sample 10 is a Category 1A and 1B document; Sample 14 a Category 1B, 1C, and 5 document; and Sample 16 a Category 1C document.  Defendants have asserted attorney-client privilege over each of these documents.  They have also asserted work-product immunity over Sample 14.

[8] "Business person" is the terminology that Defendants have used to identify non-attorney individuals appearing on their privilege log.  (*See* Pl. 7/12/16 Mot., Ex. 16.)

CMI's "repurchase risk" with respect to certain loans.[9]  Later in the email chain (*i.e.*, Nov. 26, 2012, 12:31 PM), a Citigroup business person provides an opinion on whether CMI should repurchase a particular class of loans, and also comments on the issue of CMI's "repurchase risk," further supporting Plaintiff's evidence and assertion that loan repurchase analysis is not an inherently legal task in Defendants' business.  Towards the end of the email chain, in-house counsel is no longer copied on the conversation, and Citigroup business people exchange two documents in order to further their discussion regarding Defendants' "[r]epurchase risk for [representation and warranty] violations."  The two documents, which are the attachments to Sample 19, are a February 2005 Master Mortgage Loan Purchase and Servicing Agreement, and a December 2005 amendment to that agreement.

Although in-house counsel is involved in some of the communications in Sample 19, the discussion taken as a whole demonstrates that counsel is functioning in a business role, and is neither providing legal advice nor soliciting information in order to provide legal advice.  In fact, the question about whether CMI has "repurchase risk" under the circumstances is ultimately answered not by in-house counsel, but a Citigroup business person.  Sample 19 is therefore not privileged.  *See Spectrum*, 575 N.Y.S.2d at 815.  Additionally, Sample 19's two attachments are pre-existing documents sent from a Citigroup business person to another Citigroup business person in order to further their discussion regarding the business judgment of whether CMI has "repurchase risk," and, as such, are not privileged either.  (*See supra*, Discussion, at Section II(A)(2).)  Defendants are directed to produce Sample 19 and its attachments.

---

[9] Plaintiff contends that Sample 19 and both of its attachments are Category 1A and 1D documents.  Defendants assert the attorney-client privilege over all three documents.

Sample 27 is a transmittal email from a Citigroup business person to both inside and outside counsel, merely describing what he is attaching.[10]  His attachment appears to be nothing more than factual data regarding specific loans about which U.S. Bank has inquired.  Defendants could have submitted an explanatory declaration or affidavit regarding the privileged or work-product nature of these documents, but have failed to do so, despite this Court's invitation.  Given their failure to meet their burden in establishing why these documents should be withheld from discovery, Defendants are directed to produce Sample 27 and its attachment.

Sample 30 is a July 2011 email exchange involving Citigroup business people, inside counsel, and outside counsel regarding a scheduled "repurchase call."  Sample 30 appears to be a spreadsheet compiled for discussion on that call.[11]  Although the email from outside counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), summarizes the advice of other outside counsel, Sonnenschein Nath & Rosenthall LLP ("SNR"), the attorney-client privilege only protects legal advice.  The advice summarized appears to relate only to whether Citigroup should repurchase certain loans.  As discussed, that type of advice is not legal advice, but business advice, and is therefore not privileged.  *See, e.g.*, *Fed. Hous. Fin. Agency*, 2014 WL 1327952, at *2.  Sample 30's attachment, which sets out factual information regarding specific loans, also summarizes repurchase advice from SNR.  Accordingly, it is not privileged either.  Defendants are directed to produce both documents.

---

[10] Plaintiff contends that Sample 27 is a Category 1F document and its attachment is a Category 1F and 5 document.  Defendants have asserted the attorney-client privilege and work-product immunity as to both documents.

[11] Plaintiff contends that Sample 30 is a Category 1A document and its attachment is a Category 1A and 3 document.  Defendant has withheld both documents on attorney-client privilege grounds.

Sample 31 is an April 2011 transmittal email without any content that is not already reflected on Defendants' privilege log.[12]  It is therefore not subject to the attorney-client privilege.  Sample 31's attachment is a spreadsheet, apparently summarizing loan repurchase analysis conducted by SNR.  Although there is a column in the spreadsheet entitled "SNR Finding," apparently stating SNR's judgment as to whether CGMRC should repurchase the loan at issue or request more information, again, such advice is business advice, not legal advice. Additionally, Defendants have failed to make any showing that this spreadsheet was "specifically directed to litigation strategy or defenses and [was] therefore created in a form significantly different than [it] otherwise would have been," *MASTR*, 2013 WL 6405047, at *1, such that it would be subject to work-product protection.  Defendants could have clarified why this attachment is protected by the attorney-client privilege or work-product immunity, but have failed to meet their burden of doing so.  This Court is therefore left with the understanding that, through this document, SNR is merely providing business advice to Defendants.  Accordingly, neither Sample 31 nor its attachment are privileged or protected by work-product immunity, and Defendants are directed to produce both documents.

Sample 32 is an October 2008 email from Defendants' outside counsel to a Citigroup business person, in which outside counsel writes the single statement, "See Section 5 for the reps made by Citi and Section 6 for Citi's repurchase obligations," and attaches a 2007 Mortgage Loan Purchase Agreement between Citigroup Mortgage Loan Trust Inc. and CGMRC.[13]  The

---

[12] Plaintiff contends Sample 31 is a Category 1A document and its attachment is a Category 1A, 3, and 5 document.  Defendants asserts the attorney-client privilege as to Sample 31 and both the attorney-client privilege and work-product immunity as to Sample 31's attachment.

[13] Plaintiff contends that Sample 32's attachment is a Category 1A, 1B, and 3 document. It is not clear from Plaintiff's submissions as to whether it has objected to the non-production of

agreement itself, however, labels Section 5 as "Representations, Warranties and Covenants of the Seller" and Section 6 as "Repurchase Obligation for Defective Documentation and for Breach of Representation and Warranty."  Outside counsel's statement therefore does not appear to constitute legal advice, and, without additional context, his email appears to be a mere transmittal email.  Additionally, the attachment itself, except for its footer, appears to be the same exact 2007 contract that Plaintiff attached to the Third Amended Complaint, at AR7 Dkt. 99-2.  Again, Defendants could have explained by declaration or affidavit why Sample 32 and its attachment should be protected from discovery, but have failed to do so.  Defendants are therefore directed to produce Sample 32 and its attachment.

### b.     <u>Documents That Should Be Produced in Redacted Form</u>

Samples 21, 23, and 24 should be produced in redacted form as discussed below.

Sample 21 is a mid-2008 email chain regarding a potential loan repurchase by Defendants in response to a claim of fraud regarding the loan.[14]  Neither side is completely correct in their position that the email chain should be withheld in full or produced in full.  The first email in the string (located at the bottom of the chain) transmits a lengthy letter from a third party regarding a fraud claim.  The fact that this third party is an attorney does not cloak this communication with privilege, as Defendants have not identified this individual as one of their attorneys.  Subsequent emails in the document are sent to and from Citigroup business people, and regard only the procedure for repurchasing the loan at issue.  It is not until a Citigroup business person emails Citigroup inside counsel, Ryan O'Connor, to request legal advice, that

---

Sample 32.  Defendants have asserted the attorney-client privilege with respect to both Sample 32 and its attachment.

[14] Plaintiff contends that Sample 21 is a Category 1E document.  Defendant has withheld it on attorney-client privilege grounds.

any part of the document becomes privileged.  Further, although the last email in the string (on

page one) is written by Citigroup in-house counsel, Kathleen Woodwagner, her statements do

not appear to constitute legal advice as opposed to business advice.  Indeed, her advice is simply

that a Citigroup business person "seems to have the correct take on the problem."  Accordingly,

the email from Rachel Romero to Heidi Coppola and Ryan O'Connor at the bottom of page two

may be redacted, but the remainder of the document must be produced.

Samples 23 and 24[15] should likewise be produced in redacted form.  Both are email

chains largely involving communications between Citigroup business people and third parties at

Bank of America, Wells Fargo, and U.S. Bank.  Defendants apparently base their attorney-client

privilege claims over these documents on the fact that these third-party communications are

subsequently forwarded to counsel and accompanied by requests for legal advice.  The fact that

third-party communications are forwarded to counsel, however, does not cloak them with

privilege.  Defendants should redact the first three pages of Sample 23, which include the

confidential request for and provision of legal advice between Citigroup business people, on the

one hand, and inside counsel, on the other, regarding, among other things, indemnity obligations

in a servicing agreement, but must produce the remainder of the document.  As to the

attachments to Sample 23, Defendants may withhold them.  Although the attachments are

addressed to Bank of America, the attachments themselves and inside counsel's cover email

suggest they are draft documents that are part of the attorney's communication of legal advice.

*See Colon v. City of New York*, No. 12cv9205 (JMF), 2014 WL 3605543, at *1 (S.D.N.Y. July 8,

2014) ("In the absence of an indication that [the party] shared the letter with a third party,

---

[15] Plaintiff labels Sample 23 and its attachments as Category 1D documents, and
Sample 24 as a 1D and 1E document.  Defendants have withheld each of these documents and
their attachments on attorney-client privilege grounds.

thereby vitiating any claim of privilege, the mere fact that he drafted it to a third party is not enough to defeat an otherwise valid invocation of the privilege." (citations omitted)). Additionally, Defendants should redact the top email on page one of Sample 24, which is a request for legal advice, but produce the remainder of the document.

### 3.    **Sample Documents Properly Withheld**[16]

This Court finds that Defendants have properly withheld Samples 11, 12, 15, 19, 22, 25, and their attachments on the ground of attorney-client privilege and/or work-product immunity.

Jones offers testimony that Sample 11 "represents communications and work product generated in connection with Citigroup's litigation with the FHFA," that Sample 12 "represents work product generated in connection with the SEC's investigation," and that Sample 22 "reflects work product generated in connection with a number of [ ] investigations and litigations" involving Defendants.  (Jones Decl. ¶¶ 8-9.)  Having reviewed Samples 11, 12, 22, and their respective attachments in conjunction with Jones' testimony, this Court upholds Defendants' assertions of privilege and work-product immunity.[17]  With respect to Sample 11's second attachment (AR7InCameraSample11-B), although it appears on its face to contain only factual information forwarded to counsel, the discussion within the first attachment (AR7InCameraSample11-A), viewed together with Jones' testimony, suggests that the factual information was altered and/or generated in anticipation of litigation with the FHFA.  With

---

[16] Plaintiff has not argued that it has a "substantial need" for any of the documents alleged to be attorney work product, or that it "cannot, without undue hardship, obtain their substantial equivalent by other means."  *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).  This Court therefore finds that, if a document discussed herein falls within the definition of work product, it is properly shielded from discovery.

[17] Plaintiff contends that Sample 11, 12, and their attachments are Category 1B documents, that Sample 22 is a Category 1E document, and that Sample 22's attachment is a Category 1E and 5 document.

respect to Sample 22's attachment, this Court notes that the document pertains to multiple, specified litigations and investigations in which Defendants were or are involved, and therefore appears to be subject to both the attorney-client privilege and work-product immunity.

Sample 15 is a late-2010 email chain involving communications among Citigroup business people, inside counsel, and outside counsel, regarding formulating a response to an information request by the Federal Reserve Bank of New York.[18]  In its context, Sample 15's attachment appears to be a spreadsheet generated by Citigroup business people, at the direction of counsel, to respond to the Federal Reserve's information request.  Defendants have withheld both documents on attorney-client privilege and bank-examination privilege grounds.  This Court finds that the entirety of Sample 15, except for the bottom email from the Federal Reserve, is protected by the attorney-client privilege, and that Sample 15's attachment is also protected by the attorney-client privilege.

As to the bottom email, which is a communication with the Federal Reserve, "the bank examination privilege is a qualified privilege that protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of banks."  *See Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 281 (S.D.N.Y. 2013) (internal quotation marks and citation omitted).  Given the Federal Reserve's labeling of the bottom email as "Strictly Confidential," and the content of the email, the bank examination privilege would appear to apply.  The bank examination privilege, however, "belongs to the regulatory authority and not to the banks that it regulates."  *MASTR*, 2013 WL 5437354, at *1-2.  Thus, only the Federal Reserve, and not Defendants, may assert the bank examination privilege as to this email.  For the time being, this Court will *not* compel the disclosure of this email and similar documents

---

[18] Plaintiff contends that Sample 15 and its attachment are Category 1C documents.

on Defendants' privilege log, as it is not clear that Plaintiff has ever moved to compel their disclosure.  This Court instead invites Plaintiff promptly to notify the Court if it is indeed moving to compel the production of communications between Defendants and their bank regulators, and if it is, to identify its basis for doing so.  In the event that Plaintiff states that it is moving to compel such communications, this Court will grant Defendants leave to notify their regulators in order to provide them with the opportunity to assert the bank examination privilege as to the relevant communications.

Sample 25 is a January 2012 email chain between a Citigroup business person and inside counsel that involves what this Court finds to be a request for and provision of legal advice regarding "fraud loss limits."[19]  Sample 25's attachment appears to contain information compiled for the specific purpose of facilitating counsel's provision of legal advice on this topic.  This Court therefore finds that Sample 25 and its attachment are properly withheld under the attorney-client privilege.

C. **Documents Not Subject to this Court's *In Camera* Review**

1. **Document Category 2:  Documents Shared with 406 Partners**

Plaintiff maintains that Defendants must produce all "Category 2" documents, which are purportedly privileged communications that Defendants shared with a third party, 406 Partners. (Pl. 7/12/16 Mot., at 6-7.)  In its 8/24/16 Order, this Court invited Defendants to submit one or more factual affidavits or declarations to support their assertion that they did not waive the attorney-client privilege in sharing documents with 406 Partners.  (8/24/16 Order, at 2-3.)  This Court also invited Defendants to address, factually, the standard discussed in their submissions,

---

[19] Plaintiff contends that Sample 25 is a Category 1A document and that its attachment is a Category 1E and 1F document.  Defendant has withheld both documents on attorney-client privilege grounds.

that a party does not waive the attorney-client privilege by sharing privileged communications with a third party individual who is the "functional equivalent" of that party's corporate employee.  (*See id.*, at 3; Def. Opp. to 7/12/16 Mot., at 8-9.)  As this Court noted, New York law may not be settled as to whether Defendants' asserted "functional equivalent" exception to the waiver of the attorney-client privilege is indeed a valid exception.  (*See* 8/24/16 Order, at 2-3 (citing *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14cv585, 2014 WL 7238354, at \* 2 (S.D.N.Y. Dec. 19, 2014); *Steinfeld v. IMS Health Inc.*, No. 10cv3301 (CS) (PED), 2011 WL 6179505, at \*2-4 & n.2 (S.D.N.Y. Dec. 9, 2011)).)

Defendants' sole submission on these issues is declaration testimony from Jones, a Citigroup Senior Vice President and Assistant General Counsel.  Jones' Declaration fails to demonstrate that privileged communications shared with 406 Partners retained their privilege under *Kovel* or cases discussing the "functional equivalent" employee test.  According to Jones, 406 Partners was CGMRC's "primary due diligence vendor for purposes of its residential mortgage-backed securitizations."  (Jones Decl. ¶ 4.)  Jones also testifies that, "[t]o enable 406 Partners to fulfill its responsibilities . . . , CGMRC regularly entrusted 406 Partners with commercially sensitive materials," the sharing of which was "understood to be on a confidential basis."  (*Id.* ¶ 5.)  Further, Jones states that CGMRC and 406 Partners' communications "enabled CGMRC to make informed decisions regarding which loans were eligible for purchase and potential securitization," and that the two entities "developed a very close working relationship." (*Id.* ¶¶ 6-7.)

Significantly, Jones does not testify that the disclosure of privileged communications to 406 Partners was "necessary" for CGMRC "to obtain informed legal advice," or that 406 Partners otherwise facilitated communications between CGMRC and its attorneys.  *See*

*Cohen*, 2015 WL 745712, at *3.  Rather, she testifies that disclosure of such communications with 406 Partners "enabled CGMRC to make informed decisions" regarding one of its business operations.  (*See* Jones Decl. ¶ 6.)  The advice sought in these communications was therefore not only business, as opposed to legal advice, but also was 406 Partners' advice, not the advice of an attorney.  Accordingly, regardless of whether there was a reasonable expectation of privacy in CGMRC's communications with 406 Partners, those communications are not privileged under *Kovel*.  *See Kovel*, 292 F.2d at 922 (holding that "no privilege exists" where "the advice sought is the accountant's rather than the lawyer's"); *see also Chipotle*, 94 F. Supp. 3d at 592 (holding that a third-party consultant's provision of "factual research . . . to assist Chipotle in making a business decision" did not cloak communications with that consultant with privilege under *Kovel*).

Moreover, even assuming that the "functional equivalent" employee test is valid exception to the waiver of the attorney-client privilege under New York law, Jones' testimony fails to establish many of the key factors that courts consider under that test.  For example, Jones does not state that anyone at 406 Partners "had primary responsibility for a key corporate job" at CGMRC.  *See William Tell Servs., LLC v. Capital Fin. Planning, LLC*, 999 N.Y.S.2d 327, 332 (Sup. Ct. 2014) (quoting *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005)).  Instead, she testifies that CGMRC had its own "internal due diligence team," and that 406 Partners "worked closely" with that team in providing its due diligence services.  (Jones Decl. ¶ 4.)  Nor does Jones suggest that anyone at 406 Partners "is likely to possess information possessed by no one else at [CGMRC]," *see William Tell Servs., LLC*, 999 N.Y.S.2d at 332; that 406 Partners "ever appeared on behalf of [CGMRC], corresponded with third parties as a representative of [CGMRC], or has been viewed by others as

31

an employee of [CGMRC]"; that 406 Partners maintained a substantial physical presence at

CGMRC's place of business; or that 406 Partners exercised any measure of independent

decision-making authority at CGMRC, *see Steinfeld*, 2011 WL 6179505, at *2-4 (S.D.N.Y.

Dec. 9, 2011) (discussing other factors not established here).  Although Jones testifies that

406 Partners and CGMRC had a "very close working relationship" that bears on matters relevant

to this litigation, and that their communications were "understood to be on a confidential basis"

(Jones Decl. ¶¶ 5, 7), her testimony falls short of demonstrating that individuals at 406 Partners

were the "functional equivalent" of Defendants' employees under relevant case law.  *See, e.g.*,

*Steinfeld*, 2011 WL 6179505, at *2-4; *Church & Dwight Co.*, 2014 WL 7238354, at *2-3.

As confidentiality within the attorney-client relationship is an essential element for

maintaining the attorney-client privilege, *Ambac*, 36 N.Y.S.3d at 842, Defendants have waived

the privilege for documents and communications shared with 406 Partners, and are directed to

produce those documents to Plaintiff, no later than December 16, 2016.[20]

### 2.     Document Category 4:  Documents Corresponding to Purportedly Deficient Privilege Log Entries

Plaintiff further contends that Defendants have "waived any claims of privilege or

protection" over documents whose corresponding privilege and redaction-log entries fail to

describe "the general subject matter of the documents" over which Defendants seek protection,

---

[20] It is not clear from the parties' submissions whether Defendants have withheld any documents or communications shared with 406 Partners on the ground of work-product immunity.  To the extent that they have done so, Defendants may continue to withhold those documents, if doing so is otherwise consistent with the guidance in this Order.  *See Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 123 (S.D.N.Y. 2014) ("[W]ork-product protection is not necessarily waived by disclosure to third parties. . . .  Rather, the courts generally find waiver of the work[-]product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." (internal quotation marks and citations omitted)).

in violation of Local Civil Rule 26.2(a)(2)(A)(ii).  (Pl. 7/12/16 Mot., at 8.)  Plaintiff characterizes

these documents as "Category 4" documents.  (*Id.*)  In the 8/24/16 Order, this Court stated that it

did not require any further submissions from the parties regarding Category 4 documents, but

noted that Defendants could conduct a further review of the entries that Plaintiff has challenged

and alert the Court of any modifications within five days.  (8/24/16 Order, at 3-4.)  Having heard

nothing further from the parties as to Defendants' privilege or redaction-log entries except that

Defendants have withdrawn their assertions of privilege and work-product immunity over certain

documents, this Court presumes that Defendants have not modified any of their previously

submitted log entries.

Having reviewed the challenged log entries, this Court finds that they are "sufficiently

detailed to give [Plaintiff] adequate notice of the underlying claims of privilege," and are

otherwise compliant with Rule 26(b)(5)(A) and Local Civil Rule 26.2(a)(2)(A).  *See Chipotle*

*Mexican Grill*, 94 F. Supp. 3d at 600-01.  Plaintiff specifically calls this Court's attention to

Entry Nos. 506.01 ("Email message forwarded to counsel, Philip Kopczynski, for the purpose of

requesting legal advice regarding FINRA request"), 525 ("Email generated in anticipation of

litigation regarding FINRA request"), 528.01 ("Spreadsheet collecting information in response to

FCIC investigation"), and 583 ("Email reflecting request for legal advice from counsel and

generated in anticipation of various ongoing RMBS litigation").  (Pl. 7/12/16 Mot., at 8;

Pl.  Reply in Support of 7/12/16 Mot., at 10.)  At the outset, this Court notes that these entries

appear similar to entries that Plaintiff has not categorized as deficient.  (*See, e.g.*, Pl.  7/12/16

Mot., Ex. 18, at Entry Nos. 148 ("Email reflecting request for and provision of legal advice from

counsel regarding servicing"), 1337 ("Email generated in response to FHFA RMBS investor

litigation regarding FHFA diligence summary").)  It is also difficult for this Court to discern a

33

pattern in Plaintiff's claimed deficiencies where, for example, it asserts that Entry No. 613 ("Email generated in anticipation of SEC investigation concerning Citi's RMBS business") is deficient, but Entry No. 592 ("Email generated in anticipation of FINRA investigation regarding mortgage loan originators") is not.

Regardless, the entries specifically flagged as deficient by Plaintiff identify each document's transmission date, sender, recipient(s), attorney(s) (by asterisk), and type (*e.g.*, email or spreadsheet). Those entries also identify the privilege asserted and the subject matter to which each document relates, namely, document or information requests from the Financial Industry Regulatory Authority ("FINRA"), an investigation by the Financial Crisis Inquiry Commission ("FCIC"), and various ongoing litigations relating to residential mortgage-backed securities ("RMBS"). Additionally, a separate document provided by Defendants identifies the senders, recipients, and their relationship to one another. (*See* Pl. 7/12/16 Mot., Ex. 16 (identifying, for example, individuals as "Citigroup Business Person," "CGMRC Inside Counsel," "Outside Counsel – Paul Weiss").)

Plaintiff's contention that it is entitled, in a privilege-log entry, to be told, for example, what type of information was collected in response to an FCIC investigation, who drafted the spreadsheet collecting that information, and how that information is relevant to the FCIC investigation (*id.*, at 8), finds no support in Rule 26(b)(5)(A), Local Civil Rule 26.2, or the cases Plaintiff cites. In *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97cv4978 (LMM) (HBP), 2000 WL 1538003 (S.D.N.Y. Oct. 17, 2000), for example, one of the cases upon which Plaintiff relies for support, the privilege-log entry held to be inadequate simply stated, "[c]onversation in anticipation of litigation." *Id.* at *2. The entries in this case are more detailed and more in line with entries that courts have found to be sufficient to enable litigants to assess claims of privilege

or work-product protection.  *See, e.g.*, *Orenshteyn v. Int'l Bus. Machs. Corp.*, No. 02cv5074

(JGK) (RLE), 2013 WL 208902, at *1 (S.D.N.Y. Jan. 15, 2013) ("request for legal advice re

issuance of patent and infringement by IBM" held to be a sufficient privilege-log entry).  To

require more information than Defendants have provided "would be to put [Defendants] in the

contradictory position of having to risk [their] privilege in order to preserve it."  *See Chipotle*

*Mexican Grill*, 94 F. Supp. 3d at 600-01.

This Court therefore finds that Defendants have not waived the attorney-client privilege

or work-product immunity with respect Category 4 documents, and, with respect to this category,

need not revise their privilege or redaction logs.

## III.   PLAINTIFF'S SEPTEMBER 16, 2016 MOTION CHALLENGING FORTACE'S WITHHOLDING OF DOCUMENTS

In Plaintiff's second motion, it seeks an order compelling non-party Fortace to produce

responsive communications between it and Defendants, "unless a specific, privileged

communication containing clear legal advice from Paul, Weiss to [Defendants] is included in

some part thereof."  (Pl. Fortace Mot., at 4; Letter from Statfeld to the Court, dated Oct. 27, 2016

("Pl. Fortace Reply") (AR7 Dkt. 164; ACM3 Dkt. 167), at 6.)

### A.   Relevant Background Information Regarding Paul, Weiss and Fortace

Defendants retained Paul, Weiss as counsel "to provide legal advice regarding, among

other related issues, CGMRC's contractual obligations arising out of its role as sponsor of

various residential mortgage-backed securitizations."  (Declaration of Susanna M. Buergel, Esq.,

dated Sept. 23, 2016 ("Buergel Decl.") (AR7 Dkt. 155) ¶¶ 1, 4.)  Fortace is a "risk mitigation"

firm with "technical expertise regarding mortgage loans."  (Pl. Fortace Mot., at 3.)  According to

the Engagement Agreement between Paul, Weiss and Fortace, dated July 2011,[21] Paul, Weiss

engaged Fortace, "in order to assist [Paul, Weiss] in [its] representation of Citigroup, which

assistance may include, among other things, preparation of reports and analyses, review of

mortgage loan documents, and participation in meetings with Paul, Weiss or with other parties

designated by Paul, Weiss."  (Buergel Decl., Ex. 1 ("Engagement Agreement") (AR7

Dkt. 155-1), at 1.)  As Buergel, a Paul, Weiss attorney, elaborated, "Paul, Weiss retained Fortace

to conduct loan-level analys[e]s to assist Paul, Weiss in advising Citigroup both as to its

contractual obligations regarding specific loans and in developing an overall legal strategy for

repurchase-related issues."  (*Id.* ¶ 4.)  Buergel further stated that, "[a]s an expert in the field,

Fortace performed reviews of loan files, prepared analyses and reports, and provided assistance

as necessary to aid Paul, Weiss in providing Citigroup with the requested legal advice."  (*Id.*)

Upon receiving a subpoena from Plaintiff in the above-captioned actions, Fortace

produced certain documents, but withheld 76 documents and their attachments on the attorney-

client privilege grounds.  (*See* Pl. Fortace Mot., Ex. 1 (Fortace Privilege Log).)  Fortace also

produced 17 documents with redactions, and justified those redactions on attorney-client

privilege grounds.  (*See* Pl. Fortace Mot., Ex. 2 (Fortace Redaction Log).)  Practically all of

Fortace's Privilege and Redaction Log entries describe withheld communications and documents

as having the purpose of "assisting counsel in providing legal advice to CGMRC regarding

repurchase requests," as "regarding [a] repurchase review conducted at the direction of counsel

for the purpose of assisting counsel in providing legal advice to CGMRC," or some close variant.

---

[21] Plaintiff initially requested an order compelling production of this agreement (*see* Pl. Fortace Mot., at 6), but Defendants produced it voluntarily.  Accordingly, the request is moot.

(*See* Pl. Fortace Mot., Exs. 1, 2.)  Defendants and Fortace have placed 12 of these withheld or redacted documents before this Court for its *in camera* review.

      **B.**    **The Parties' Arguments**

      Plaintiff contends that Fortace's withheld and redacted documents (the "Fortace Documents") are not privileged because the work that Fortace performed for Defendants, through Paul, Weiss as an intermediary, was the same type of work – *i.e.*, "loan-level analyses" and "reviews" in response to mortgage loan repurchase demands – that CGMRC previously performed internally in the ordinary course of its business and pursuant to its contractual obligations.  (Pl. Fortace Mot., at 2 (citing deposition testimony and documents produced in discovery); Pl. Fortace Reply, at 2.)  Defendants and Fortace, on the other hand, maintain that the Fortace Documents are privileged under *Kovel* on the theory that Fortace was Paul, Weiss' agent, and that Fortace's "expert services" were "reasonably necessary to assist Paul, Weiss in the provision of legal advice to CGMRC."  (Def. Fortace Opp., at 3-4.)

      Neither Defendants nor Fortace rebut Plaintiff's assertions or evidence that CGMRC previously performed loan repurchase reviews internally and pursuant to its contractual obligations.  (*See* Def. Fortace Opp., at 4 (arguing, instead, that Plaintiff's contentions "miss[ ] the point").)  Moreover, Plaintiff does not dispute that Fortace was Paul, Weiss' agent, rather than Defendants' agent, or that the Fortace Documents were kept confidential, at least among Defendants, Fortace, and Paul, Weiss.  (*See* Pl. Fortace Reply, at 2-3; *see also* Engagement Agreement, at 2 (stating that all communication and transmission of documents between or among Citigroup, Paul, Weiss, other counsel for Citigroup, Fortace, and their agents "must . . .

be treated by Fortace with the strictest confidentiality").[22])  Accordingly, the issue for the Court is whether Fortace's services were "necessary for the client to obtain informed legal advice" from its attorney.  *See Cohen*, 2015 WL 745712, at *3; *see also Ackert*, 169 F.3d at 139.

### C.     **This Court's *In Camera* Review**

#### 1.     **Fortace and Paul, Weiss Communications**

Of the 12 *in camera* review documents, seven are communications between Fortace and Paul, Weiss, and an eighth document appears to be an attachment to one of those communications (*i.e.*, Tab 3 appears to be the attachment referenced in Tab 2).[23]  Each of these documents and their attachments (*i.e.*, Tabs 2, 3, 4, 5, 7, 8, 9, and 11) are from the 2011-2012 time frame, and reflect a work protocol in which Paul, Weiss would provide Fortace with loan repurchase demands received by Citigroup[24]; Fortace would, at Paul, Weiss' request, analyze those demands and make a recommendation as to how Citigroup should respond – for example, by requesting additional documentation; and Paul, Weiss would communicate those recommendations to Citigroup.  Indeed, many of the spreadsheets included among these document families provides the "current status" of repurchase demands, and states – presumably

---

[22] That the Engagement Agreement also provides the that all communications and transmissions of documents between Citigroup, Paul, Weiss, Fortace, and other relevant parties "are protected by all applicable privileges" (*see id.*) is irrelevant to an actual privilege determination.  "[T]he fact that private parties agree that something is privileged does not make it so."  *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties LLC*, No.No. 01cv9291 (JSM), 2002 WL 1455346, at * 5 (S.D.N.Y. July 3, 2002) (citing *Aetna Cas. & Surety Co v. Certain Underwriters at Lloyd's London*, 676 N.Y.S. 2d 727, 733 (Sup. Ct., N.Y. Cnty. 1998)).

[23] In the document set provided by Defendants, certain documents are not given a "Sample" number, but instead, are only identified by the divider tab that they are behind and by a lengthy "log entry number."  For ease of reference, this Court refers to these documents by their tab number.

[24] The particular Citigroup entity is not clear from the communications.

consistent with Fortace's recommendations – that Citigroup has or will request additional information in response to a given repurchase demand.  Certain documents also show Fortace requesting repurchase-related documents from Paul, Weiss, and Paul, Weiss soliciting Fortace's advice as to whether Citigroup should request additional information from third parties regarding repurchase demands.

Given Fortace's purported technical expertise in mortgage loans, it is plausible that Fortace's services improved Paul, Weiss' comprehension of the factual issues underlying the loan repurchase demands that Citigroup received, and thereby facilitated attorney-client communications.  Regardless, for Fortace and Paul, Weiss' communications to be privileged, the communications must serve the purpose of facilitating legal advice, as opposed to business advice, and the advice must be Paul, Weiss' advice, not Fortace's.  *See Kovel*, 296 F.2d at 922; *Cohen*, 2015 WL 745712, at *3; *Chipotle Mexican Grill*, 94 F. Supp. 3d at 592.  As discussed above, advice regarding whether or not to repurchase a loan or request more information, consistent with a contractual obligation, is not an inherently legal exercise, but is generally viewed by courts as business advice.  (*See supra*, Discussion, at Section II(A)(1) (collecting cases).)

Indeed, Plaintiff has submitted unrebutted evidence that Defendants previously performed such repurchases analyses in-house and without the involvement of counsel.  (*See id.*) The fact that Fortace, a firm of non-attorneys, conducted repurchase analyses in this instance only supports the notion that such work is not an inherently legal task in Defendants' business. Defendants may not cloak repurchase analyses with the attorney-client privilege by outsourcing that work to counsel, who then outsources it to a third-party vendor.  *See, e.g.*, *ACE Sec. Corp.*, 2016 WL 6079170, at *3, 6-7 (communications regarding loan repurchase analyses conducted by

consultants hired by a party's outside law firm held to be neither privileged nor protected from discovery under the work-product doctrine); *Home Equity Mortg. Trust Series 2006-1*, 2014 N.Y. Misc. LEXIS 3282, at *6-7 (repurchase analyses conducted by outside law firm not work product and not privileged despite the party employing the law firm anticipating litigation); *Assured*, 2013 WL 1195545, at *8 ("The mere fact that outside counsel and consultants were retained to assist the repurchase review is insufficient to shield all of the repurchase documents from discovery.").  Additionally, it is not clear that the advice being given to Citigroup reflected in these communications is Paul, Weiss' advice rather than Fortace's.  (*See, e.g.*, Tab 2, at 2 ("We (Paul, Weiss) saw that you (Fortace) reviewed the 15 repurchase demands . . . and recommended that Citi request the loan files/critical documents from the trustee.  We have instructed Citi to send the letters, and we will make sure that you are copied on that letter when it goes out.").)

Accordingly, Fortace is directed to produce Tabs 2-5, 7-9, and 11, their attachments, no later than December 16, 2016.

### 2.      Internal Fortace Communications

Two of the documents submitted for *in camera* review are internal Fortace communications (Tabs 6 and 10).  Tab 6 is an August 2011 transmittal email for which Defendants and Fortace have failed to provide any context.  Without context, it is nonsensical, and does not appear to relate to the facilitation of legal advice from Paul, Weiss to CGMRC or CMI.  Tab 6's attachment is a document that summarizes numerous "MI rescissions" and repurchase requests received by a Citigroup entity.  After each summary, the document lists additional information and documentation that Fortace "needs," apparently in order to advise Citigroup, through Paul, Weiss, as to how to respond to, or "rebut," the rescissions and requests.

Without additional context, which, again, Defendants and Fortace have not provided, there is nothing in this document that suggests it may be withheld under *Kovel*. It relates to business advice, not legal advice, and the document appears to relate to Fortace's advice, not Paul, Weiss' advice. *See Kovel*, 296 F.2d at 922.

Tab 10 is a draft of an email whose intended recipient is a Paul, Weiss attorney. Both Tab 10 and its two attachments are similar to the documents in Tabs 2-5, 7-9, and 11, in that they summarize the status of Fortace's repurchase analyses and recommendations to Citigroup. Again, these documents relate to the facilitation of business advice. Further, it is not clear that the advice is Paul, Weiss' advice as opposed to Fortace's advice. Tab 10 and its attachments are therefore not privileged.

Fortace is directed to produce Tab 6, 10, and their attachments, no later than December 16, 2016.

### 3.    Non-Fortace Communications

The Buergel Declaration makes no reference to Tabs 12 and 13 (*see* Buergel Decl. ¶ 8 & n.2), and it is not apparent from the documents themselves, which are emails, that any individual from Fortace was a sender or recipient. Nevertheless, the documents appear on Fortace's privilege log, so it appears that they wound up in Fortace's possession. Tab 12 is a communication from SNR to Citigroup business people, inside and outside counsel, and other, unidentified individuals, similar to Samples 30, 31, and their attachments, which, as explained above, are not privileged. For the same reasons, Tab 12 and its attachment are not privileged. Tab 13 is another communication involving SNR and Citigroup business people, in which the only communications relate to whether certain individuals discussed 11, as opposed to 12, loans with Paul, Weiss. There is no request for or provision of legal advice anywhere in the

discussion, and, therefore, it is not privileged.  Additionally, Tab 13's attachment appears to be nothing more than a factual summary relating to SNR's repurchase analyses, which is not privileged for the same reason Samples 30, 31 and their attachments are not privileged.  Fortace is directed to produce Tabs 12, 13, and their attachments, no later than December 16, 2016.

\*   \*   \*

Although this Court is directing Fortace to produce all 12 of the documents that it has submitted for *in camera* review, this Court is not necessarily ordering Fortace to produce each and every document on its privilege and redaction logs.  As Plaintiff makes clear, it is not seeking any "specific privileged communication containing clear legal advice from Paul, Weiss to [Defendants]" (Pl. Fortace Reply, at 6), which, given the relationship between Fortace and Paul, Weiss described in the Buergel Declaration, may exist somewhere in the withheld documents.  To the extent such advice exists in Fortace's withheld documents, Fortace may redact that advice or withhold the documents containing that advice, if doing so would otherwise be consistent with the guidance provided by this Order.  Regardless, Fortace is directed to complete an additional review of the documents that Plaintiff has argued were improperly withheld and make any supplemental document production, consistent with the guidance provided by this Order, no later than February 3, 2017.

IV.     **PLAINTIFF'S SEPTEMBER 16, 2016
        MOTION CHALLENGING DEFENDANT CMI'S
        REFUSAL TO DESIGNATE A RULE 30(b)(6)
        DEPOSITION WITNESS ON PARTICULAR TOPICS**

In its third motion, Plaintiff seeks to compel defendant CMI to designate and produce one or more Rule 30(b)(6) witnesses to testify regarding three previously noticed deposition topics.[25] (Pl. 30(b)(6) Mot.)  The first, "Topic 2," concerns CMI's acquisition of, and due diligence regarding, the loans in the AR7 Trust.  (*See id.*, Ex. 1, at 7.)  The second, "Topic 7," concerns CMI's "receipt of repurchase demands as an originator of mortgage loans," its "methodology for determining whether a mortgage loan must be repurchased . . . as a result of a breach of a representation and warranty," and any actual repurchases that CMI made.  (*See id.*, Ex. 1, at 9.)  The third, "Topic 11," concerns the extent to which every single one of the approximately 30,000 documents produced by CMI in the AR7 Action falls under the business records exception to the hearsay rule.  (*See id.*, Ex. 1, at 9-10.)[26]  CMI has objected to Topics 2 and 7 on the ground that they are irrelevant and unduly burdensome, and Topic 11 on the ground that it is unduly burdensome.  (*See* Letter from Buergel to the Court, dated Oct. 21, 2016 ("Def. 30(b)(6) Opp.") (AR7 Dkt. 162).)

    A.     **Topic 2:  Acquisition of and Due Diligence
        Regarding Loans in the AR7 Trust**

As to the relevance of Topic 2, CMI does not dispute that it purchased the loans in the AR7 Trust from non-party lenders and sold those loans to CGMRC for securitization.  (*See*

---

[25] Initially, Plaintiff's motion encompassed four topics, but Plaintiff has since withdrawn one of those topics.  (*See* Letter from Statfeld to the Court, dated Oct. 31, 2016 ("Pl. 30(b)(6) Reply") (AR7 Dkt. 165), at 1.)

[26] Plaintiff also maintains that this deposition topic encompasses the source of the documents produced (*see* Pl. 30(b)(6) Mot., at 4), but it is not clear from the topic, as written, that this is so (*see id.*, Ex. 1, at 9-10).

Pl. 30(b)(6) Mot., at 2; Def. 30(b)(6) Opthat it p., at 2.)  Nor does CMI dispute that it conducted

due diligence as to those loans and that it had a contractual duty to notify Plaintiff as to any

breaches of representations and warranties in connection with those loans.  (*See* Pl. 30(b)(6)

Mot., at 3; Def. 30(b)(6) Opp., at 2.)  CMI argues, in what resembles a defense on the merits, that

Topic 2 is nonetheless irrelevant because its "acquisition group" conducted the due diligence on

the loans at issue before it ever sold those loans to CGMRC, and the knowledge that its

acquisition group obtained at that earlier point in time should not be "imputed to an entirely

different business line at [CMI] based on [CMI's] subsequent role as Master Servicer" of the

AR7 Trust.  (*See* Def. 30(b)(6) Opp., at 2.)  CMI further contends that it is "a very large

company with many different business lines, and it is only a defendant in this action based on its

role as Master Servicer for the Trust and as one of the servicers of the loans."  (*Id.*)

 CMI's relevancy arguments are unpersuasive.  Plaintiff claims that CMI breached its

contractual obligation to notify Plaintiff of any breaches of representations and warranties in

connection with the loans at issue in the AR7 Action.  (AR7 TAC ¶ 127.)  If CMI previously

obtained knowledge of breaches of those representations and warranties through its acquisition

group's due diligence efforts – knowledge which it never communicated to Plaintiff – then that

knowledge would be relevant to Plaintiff's case.  CMI's arguments to the contrary appear to rely

on the factual contention that CMI's different "business lines" do not communicate, and the legal

contention that the Court should not impute knowledge possessed by one CMI business line at

one point in time to another CMI business line at a different point in time.  (*See* Def. 30(b)(6)

Opp., at 2.)  Except for the bare assertions of counsel, CMI has provided no evidence or

authority to support either of these arguments.  Plaintiff, for its part, has submitted evidence

suggesting that CMI's different business lines do, in fact, communicate with one another.  (*See*

Pl. 30(b)(6) Reply, at 3-4.)  Accordingly, this Court finds that Plaintiff has carried its burden of demonstrating the relevance of Topic 2 under Rule 26.

CMI's objection as to the burden imposed by Topic 2, however, has merit.  According to the Third Amended Complaint, there are 2,016 loans in the AR7 Trust, and CGMRC breached one or more of its representations and warranties in connection with a substantial number of those loans.  (*See* AR7 TAC ¶ 1; *see id.* ¶ 4 (noting that a forensic review of 613 of the loans revealed that at least "80% of the loans reviewed . . . breached one or more of Citigroup's representations and warranties").)  Given the number of loans at issue, it would not be proportional to the needs of the case to order CMI to prepare a Rule 30(b)(6) witness to testify as to the due diligence conducted on what may be over 1,000 different loans.  This is particularly so given the fact that it would be impossible, within the time confines of a deposition, *see* Fed. R. Civ. P. 30(d)(1), for Plaintiff to question a witness regarding over 1,000 different loans.  Realistically, Plaintiff would only be able to address a small sample of those loans in a deposition, and thus, the likely benefit to Plaintiff of imposing such a substantial preparation burden on CMI would be marginal, at best.  For these reasons, this Court will not impose the burden on CMI of preparing a witness to testify on all matters addressed by Topic 2, the vast majority of which could not even be covered in even a seven-hour deposition.

Although this Court recognizes that some other form of discovery might be a more productive means for obtaining the "loan-by-loan" due diligence information that Plaintiff seeks, this is not a reason to deny Plaintiff the opportunity to solicit deposition testimony on Topic 2 altogether, particularly in light of the relevance of the topic, as discussed above.  This Court therefore orders Plaintiff to compile and provide to CMI a reasonably narrow list of loans about which it would like to ask Topic 2 questions during a Rule 30(b)(6) deposition.  The number of

loans should be no greater than the number that Plaintiff could reasonably cover with a witness during the time that Plaintiff intends to devote to this topic during its Rule 30(b)(6) deposition. The parties are directed to meet and confer as to the specific number of loans and to the length of time before the deposition that Plaintiff must identify the specific loans to CMI so that it may prepare its witness.  If the parties are unable to agree on these issues, they are directed to contact this Court with their competing proposals no later than January 13, 2017, and this Court will set a schedule.

### B.      Topic 7:  CMI's Repurchase of Mortgage Loans

As to the relevance of Topic 7, Plaintiff concedes that it is suing CGMRC, not CMI, for failing to repurchase loans in the AR7 Trust.  (*See* Def. 30(b)(6) Opp., at 3; Pl. 30(b)(6) Reply, at 5; *see also* AR7 TAC ¶ 106.)  Plaintiff also concedes that Topic 7 "seeks testimony concerning how CMI would and did respond to repurchase requests directed to it as an originator," and that the loans subject to repurchase covered by this topic would "not . . . be limited" to the loans at issue in this action.  (*See* Pl. 30(b)(6) Reply, at 5.)  Nonetheless, Plaintiff maintains that Topic 7 is relevant, because (1) Plaintiff expects that CMI will argue that CMI was only obligated to notify Plaintiff of "material and adverse breaches [of representations and warranties]," and (2) questioning on Topic 7 would reveal "CMI's process, methodology, and standards for determining whether a representation and warranty breach was material.")  (*Id.*)  According to Plaintiff, if CMI itself repurchased loans in the past because certain breaches of representations and warranties occurred that are also present in this case, then those repurchase decisions would be "highly relevant evidence" that CMI failed to notify Plaintiff of a breach in this case.  (*Id.*)  Plaintiff also contends that CMI's repurchase analysis "is relevant evidence as to the parties' expectations (and the market in general) of what constitutes a material and adverse breach."  (*Id.*)

CMI, on the other hand, maintains that Topic 7 is "detached from the actual issues" in this case and would be burdensome, "because no witness could testify as to the characteristics of particular loans."  (Def. 30(b)(6) Opp., at 3.)

Plaintiff's arguments as to the relevancy of Topic 7 are tenuous.  Acknowledging that its claims against CMI have nothing to do with CMI's receipt of repurchase demands or CMI's failure to repurchase the loans at issue in this case, Plaintiff pivots to a discussion regarding the importance of Topic 7 to its efforts to explore how CMI determined whether a breach of a representation or warranty was "material."  (*See* Pl. 30(b)(6) Reply, at 5.)  As Topic 7 is written, however, it does not address CMI's "materiality" determinations.  Instead, it seeks information regarding CMI's "receipt of repurchase demands as an originator of mortgage loans," its "methodology for determining whether a mortgage loan must be repurchased . . . as a result of a breach of a representation and warranty," and "any repurchase [of a mortgage loan] by [CMI]." (Pl. 30(b)(6) Mot., Ex. 1, at 9.)  Even if an exploration of these repurchase-oriented topics could lead to testimony on CMI's "materiality" determinations – and accepting, for these purposes, that CMI does intend to raise a defense relating to its "materiality" determinations – requiring CMI to prepare a witness to testify regarding Topic 7 is an indirect and burdensome means to obtain discovery on this issue.  It would not be proportional to the needs of this case to order CMI to prepare a witness on the broad topic of the loan repurchase history and methodology of its employer, where Plaintiff is suing CMI's co-defendant, CGMRC, for its alleged repurchase failures, and the relevant information that Plaintiff seeks from CMI is much narrower.  Plaintiff's motion to compel CMI to produce a witness to testify on Topic 7 is therefore denied.

C.    **Topic 11:  Business Records Factors for Documents Produced**

As to Topic 11, *i.e.*, the extent to which documents produced by CMI are business records under Rule 803(6) of the Federal Rules of Evidence, CMI objects on the ground that the topic would impose an undue burden on it because it has produced approximately 30,000 documents in this action.  (*See* Def. 30(b)(6) Opp., at 4.)  CMI states that it is "open to negotiating some kind of process by which the parties can identify in advance of trial the universe of documents for which there is or is not a business record dispute," but maintains that a deposition is simply not the appropriate means to provide Plaintiff with the information it seeks. (*Id.*)  While this Court agrees that Plaintiff is entitled to discovery on whether the documents it intends to use at trial are business records, this Court finds that ordering CMI to prepare a witness on this topic for 30,000 or so documents would be unduly burdensome.  It would be impossible for Plaintiff to question a witness about all of these documents, even during a seven-hour deposition.  Granting Plaintiff's motion as to Topic 11 would therefore impose a substantial preparation burden on CMI and yield only a marginal benefit for Plaintiff.

In its reply brief, Plaintiff clarifies that it "intends to approach the matter categorically, and certainly does not intend to subject a witness to a document-by-document examination of each and every document CMI has produced in this litigation."  (Pl. 30(b)(6) Reply, at 7.) Plaintiff, however, has not identified those categories, or the number of categories, to the Court. Nor does it appear from the parties' submissions that they have met and conferred on this possible compromise.

As this Court finds that a categorical approach to Topic 11 could be an appropriate means to bring the topic into compliance with Rule 26(b)(1) (depending on the scope and number of document categories), this Court directs the parties to meet and confer regarding the scope and

48

number of such categories, and the amount of time prior to the Rule 30(b)(6) deposition that Plaintiff will provide the categories to CMI.  Similar to this Court's discussion regarding Topic 2, the number of categories should be limited to the number that Plaintiff could reasonably cover in the amount of time that it intends to devote to this topic in a Rule 30(b)(6) deposition.  If the parties are unable to reach an agreement on the scope and number of document categories for this deposition topic, then they are directed to contact this Court with their competing proposals no later than January 13, 2017 for resolution.  During their meet and confer, the parties should attempt to reach a stipulation regarding the business-record status of as many of Plaintiff's identified document categories as possible.

## **CONCLUSION**

As to Plaintiff's July 12, 2016 motion **(Dkt. 134, in 13cv6989)**, it is hereby ORDERED as follows:

1.   No later than December 16, 2016, Defendants are directed to produce (a) CITI-2007-AR7 00208468, Samples 9, 17, 18, 20, 26, 28, 34, 35, and their attachments, consistent with their letter to the Court agreeing to produce these documents, and (b) Samples 10, 14, 16, 19, 27, 30, 31, 32, and their attachments, consistent with the guidance above.

2.   No later than December 16, 2016, Defendants are directed to produce redacted versions of Samples 13, 21, 23, 24, 29, and their attachments, consistent with the guidance above.

3.   Defendants' assertions of attorney-client privilege and/or work product are upheld as to Samples 11, 12, 15, 19, 22, 25, and their attachments.

4.   No later than December 16, 2016, Defendants are directed to produce all documents shared with 406 Partners, consistent with the guidance above.

5.   Defendants are not required to revise their privilege or redaction log entries.

6.      No later than February 3, 2017, Defendants are directed (a) to complete an additional review of all documents identified by Plaintiff as improperly withheld as Category 1A-1F, 3, and 5 documents, consistent with the guidance above, and (b) to make any supplemental document production resulting from that review.

As to Plaintiff's Fortace motion (**Dkt. 152 in 13cv6989, and Dkt. 161 in 13cv2843**), it is hereby ORDERED as follows:

1.      No later than December 16, 2016, Fortace is directed to produce the documents behind Tabs 2 through 13 in the binder provided to this Court.

2.      No later than February 3, 2016, Fortace is directed (a) to conduct an additional review of all documents identified by Plaintiff as improperly withheld under *Kovel*, consistent with the guidance above, and (b) to make any supplemental document production resulting from that review.

As to Plaintiff's Rule 30(b)(6) motion (**Dkt. 151 in 13cv6989**), it is hereby ORDERED as follows:

1.      Plaintiff's motion to compel CMI to produce a Rule 30(b)(6) witness on Topic 2 is granted in part and denied in part, as set forth above.

2.      Plaintiff's motion to compel CMI to produce a Rule 30(b)(6) witness on Topic 7 is denied.

3.      Plaintiff's motion to compel CMI to produce a Rule 30(b)(6) witness on Topic 11 is granted in part and denied in part, as set forth above.

4.      This Court has directed the parties to confer in good faith to try to resolve certain issues relating to the Rule 30(b)(6) deposition on Topics 2 and 11. If, after full good-faith conference, the parties are unable to resolve those issues,

then they are directed to contact this Court with their competing proposals no later than January 13, 2017.

Dated:  New York, New York
       December 7, 2016

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)

51